**CRYOGENIC EQUIPMENT, INC., and Fidelity and Deposit Company of Maryland, Appellants,**

v.

**SOUTHERN NITROGEN, INC., and Hunter Turbo Corp., Appellees.**

**No. 73–1436.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1973.

Decided Jan. 22, 1974.

and market liquid oxygen. One of the by-products of the process used by Southern to produce the oxygen was another common, but potentially profitable gas—nitrogen. Because Southern lacked the facilities needed to liquify this gaseous by-product, the nitrogen produced was simply bled off into the atmosphere and wasted. In an effort to exploit the profit potential represented by this waste gas, William J. Wynne, a stockholder of Southern, formed a new corporation, Southern Nitrogen, Inc. (SNI), an appellee herein.

SNI contracted with the appellant, Cryogenics Equipment, Inc. (CEI), to have CEI construct a nitrogen liquification plant adjacent to Southern's already operational oxygen liquification facility, which plant was to be used to liquify the nitrogen produced by Southern. An integral part of the plant furnished by CEI, a turbo expander unit with an attached compressor, was purchased by CEI from the other appellee herein, a third-party defendant below, Hunter Turbo Corp. (Hunter).

The contract between SNI and CEI, a result of lengthy and detailed negotiations by representatives of both parties, called for SNI to pay CEI $135,000 in exchange for a liquification plant with the capacity to liquify 45,000 standard cubic feet of nitrogen gas per hour. In addition to the specification of plant capacity, the contract contained the following paragraph in its "Standard Conditions of Sale":

1. WARRANTY: Cryogenic Equipment, Inc. (CEI) warrants that the equipment delivered hereunder shall be of the kind and quality described herein, and no other warranty, except of title, shall be implied. * * * Equipment and accessories purchased by CEI from outside vendors are warranted only to the extent of the outside vendors' warranties to CEI. * * * *In no event shall CEI be liable for anticipated profits, consequential damages or loss of use of the*

---

Robert C. Compton, El Dorado, Ark., for appellant.

William J. Wynne, El Dorado, Ark., and William H. Hodge, Little Rock, Ark., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and STUART, District Judge.*

STUART, District Judge.

Southern Cryogenics, Inc., a corporation not a party to this action, was formed in the early 1960's to produce

---

* W. C. Stuart, District Judge, Southern District of Iowa, sitting by designation.

*equipment or of any installation into which the equipment may be put.* (Emphasis added.)

For reasons not germane to this appeal, the plant furnished by CEI was unable to perform satisfactorily and required numerous costly repairs. SNI then brought the instant action against CEI seeking actual, consequential and punitive damages in the amount of $700,000. CEI counterclaimed for $19,703.37, claiming that amount was still due it on the purchase price. CEI also filed a third-party complaint against Hunter for indemnity, claiming that the inability of the plant to perform as promised was due to Hunter's breach of its contract with CEI. Hunter, in turn, counterclaimed against CEI for the $26,457.22 Hunter asserted was the balance due it from CEI. CEI responded to this counterclaim by seeking indemnity therefor from SNI.

After a six-day trial before the Hon. Oren Harris, the jury returned the following verdicts:

1. For SNI on its complaint against CEI in the amount of $121,500;

2. For CEI on its counterclaim against SNI in the amount of $13,500;

3. For Hunter on the third-party complaint of CEI; and

4. For Hunter on its counterclaim against CEI in the amount of $23,093.22.

The verdict in favor of SNI was further broken down in a special interrogatory as follows:

| | |
|---|---|
| Loss of profits | $86,500 |
| Damage to property | 0 |
| Cost of modifications | $35,000 |

CEI appeals from so much of the verdict against it in favor of SNI as represents loss of profits and from the verdict in favor of Hunter. SNI has not cross-appealed from the verdict rendered

on CEI's counterclaim against it and the correctness of that verdict is not before us.

## I. Loss of Profits

■ In support of its contention that it was error for the court below to submit the question of lost profits to the jury, CEI argues, alternatively, that the contract absolved it from any liability to SNI for loss of profits, or, even if it might otherwise be so liable, the evidence adduced at trial was too remote and speculative to justify submitting that issue to the jury. Because we agree with appellant's position with respect to the effect of the contract, we find it unnecessary to discuss the sufficiency of the evidence of lost profits.

In Gramling v. Baltz (1972), 253 Ark. 361, 485 S.W.2d 183, the Arkansas Supreme Court was faced with the assertion that § 2–719 of the Arkansas Uniform Commercial Code, Ark.Stat.Ann. § 85–2–719 (Add.1961), conditions the enforceability of contractual limitations or exclusions of liability for consequential damages on a single factor—that such limitations not be unconscionable. While it agreed that freedom from unconscionability was one criterion of validity, the court went further, stating that such contractual limitations must also be phrased in "clear and unmistakable language," citing with approval the following disclaimer upheld in Southwest Forest Indus. v. Westinghouse Elec. Corp. (9th Cir., 1970), 422 F.2d 1013, cert. denied (1970), 400 U.S. 902, 91 S. Ct. 138, 27 L.Ed.2d 138: "Westinghouse shall not be liable for consequential damages." *See* Council Bros. v. Ray Burner Co. (5th Cir., 1973), 473 F.2d 400.

Both parties seem to agree that *Gramling* represents the Arkansas law on limitations of remedy.[1] SNI, however, takes issue with CEI's characterization of its disclaimer as "clear and un-

1. It should be noted that this court is not faced with the factual situation that the Arkansas Supreme Court faced in *Gramling*. In that case, a disclaimer was held invalid because it was ambiguous—it was not clear

from the language of the disclaimer whether it sought to limit remedies or warranties. SNI and CEI agree that the disclaimer here in issue is a limitation of remedy.

mistakable." Pointing to the fact that the front page of the contract contains language expressly guaranteeing the nitrogen plant to have a certain capacity, SNI claims that the disclaimer buried on the back of the contract "deep in the WARRANTY section of [CEI's] preprinted form" is ineffective as a modification of CEI's liability for the express guarantee of capacity. If the disclaimer is to be accorded any force at all, SNI asserts, it should be limited solely to liability for breach of the warranties contained in the WARRANTY paragraph itself.

With this position we cannot agree. Clearly, in view of the expertise of the negotiators of this agreement (SNI's Wynne being a highly respected and knowledgeable commercial lawyer of some 18 years' standing and CEI's Lorenz being an engineer with some 24 years' experience in production and management in the cryogenics industry) and the complete absence of any evidence of a disparity of bargaining power the limitation of remedy was not unconscionable. *See* K & C Inc. v. Westinghouse Elec. Corp. (1970), 437 Pa. 303, 263 A.2d 390.

Nor can it validly be claimed that the limitation was unclear or misleading. The record indicates that Wynne was familiar with the WARRANTY paragraph as early as August 9, 1969, approximately four months before CEI sent SNI its final proposal. In addition, the contract contains a sentence immediately preceding the express guarantee relied on by SNI to the effect that that guarantee is subject to the conditions of sale—including the disclaimer—appearing on the reverse side of the contract. Finally, not even SNI contends that the limitation is phrased in equivocal language. Thus, we are convinced that the challenged limitation, phrased as it is and placed in the WARRANTY paragraph in the contract is not misleading. It is just such a clear and unmistakable disclaimer of liability for loss of profits as was held valid in Southwest Forest Indus. v. Westinghouse Elec. Corp., *supra,* and approved in *Gramling.* Accordingly, we hold that it was error to submit the issue of liability for lost profits to the jury.

## II. Hunter's counterclaim

CEI also appeals from the verdict in favor of Hunter and denying it recovery on its indemnity counterclaim against SNI, claiming that the verdict was contrary to the preponderance of the evidence. CEI "freely" admits, however, that "this point is not in the league with points I and II [involving its liability for lost profits]." We agree. Viewed in the light most favorable to appellees, there is more than ample evidence in the record to support a jury finding that CEI undertook to pay Hunter for the extra work it performed and that such extra expenses as CEI incurred were in no way the responsibility of SNI. Accordingly, CEI's contentions with regard to the Hunter counterclaim and its indemnity counterclaim against SNI are without merit.

## III. Relief

In view of the special interrogatory submitted to the jury, there is no need to remand this case for a new trial on the question of damages. So much of the judgment below as represents lost profits of SNI, that is, $86,500, is hereby vacated. The remainder of the judgment is affirmed.

This case is remanded to the district court for entry of judgment in accordance herewith.

Remanded with directions.