**KOEHRING COMPANY, a Wisconsin corporation, Plaintiff,**

v.

**A.P.I., INCORPORATED, a Michigan corporation, et al., Defendants.**

**Civ. A. No. 39733.**

United States District Court,
E. D. Michigan, S. D.
Jan. 23, 1974.

Laurence M. Scoville, Jr., James C. VanDyke, Clark, Klein, Winter, Parsons & Prewitt, Detroit, Mich., for plaintiff.

Lawrence J. Stockler, Beitner & Stockler, Detroit, Mich., for defendants.

## OPINION

RALPH M. FREEMAN, District Judge.

This is a motion by the plaintiff, Koehring Company, to dismiss parts of the defendants' counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Plaintiff is a corporation who sold equipment to defendant A.P.I., Incorporated. Defendants American Plastics Industries, Inc., Standard Industries, Inc., and The New England Industries, Inc. are guarantors of the debt owing to plaintiff from A.P.I. due to the above mentioned sale. Plaintiff brought this action to foreclose a lien on the property sold, and sell the property to satisfy the unpaid balance of the debt. When the defendants answered the complaint, they asserted a counterclaim seeking damages in the amount of $2,000,000.

Plaintiff contends that most of this counterclaim should be dismissed as it alleges claims and seeks damages that are improper under the sales agreement, a copy of which is attached to the complaint. Plaintiff asks that the court dismiss the allegations and prayers for relief based on breach of warranty for delay in delivery, and direct, indirect, or consequential damages since the sales agreement contains a disclaimer of warranties clause and limits the plaintiff's liability on the contract to repairing or replacing the merchandise.

Defendants' response to the motion asserts that the counterclaim is proper because due to certain conduct by Koehring, the disclaimer of warranties should be set aside and A.P.I. should not be limited to the remedies provided in the sales agreement.

The motion to dismiss was filed on May 10, 1973. Plaintiff filed a supplemental brief on June 13. On June 28, the defendants filed their response to this motion. While seeming to recognize that the motion was made pursuant to Rule 12, the response included the contention that the motion was defective since it failed to conform to Rule 56(e) which defendants contend requires supporting affidavits attached to the motion.

On August 7, the plaintiff retained new counsel. After the parties were granted several adjournments, the motion was finally set for hearing on Monday, November 12. On Friday, November 9, the plaintiff sought another adjournment which, at the request of the defendant, the court refused to grant. On the morning of the hearing plaintiff presented a third brief to the court, in which it asked that the motion be treated as a motion for summary judgment under Rule 56. The brief was accompanied by four affidavits.

The defendants objected to the requested transformation of a Rule 12 motion to a Rule 56 motion. Defendants felt that the motion had already been pending too long due to delay by the plaintiff and that if the court were to

treat the motion as one for summary judgment, another adjournment would be necessary in order for them to appropriately respond. The court decided to hear the motion as a Rule 12 motion and has disregarded any material which would convert the motion to one for summary judgment.

Before discussing the merits of this motion, in order to clear up any confusion about whether this is a motion to dismiss or a motion for summary judgment, a few words should be said about the defendants' contention that the motion was defective for failure to include affidavits at the time the motion was filed. As originally filed, plaintiff was moving under Rule 12(b)(6). There is no requirement under this rule that motions be accompanied by affidavits. In fact, had the motion been accompanied by affidavits, the motion would have been treated as one for summary judgment under Rule 56. Rule 12(b) states in pertinent part as follows:

> (i)f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Even had the motion originally been filed under Rule 56, supporting affidavits are not required. Rule 56(b) states that "(a) party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move *with or without* supporting affidavits for a summary judgment in his favor as to all or any part thereof." (emphasis added) Thus it is clear that even were this motion to be treated as one for summary judgment, there need be no supporting affidavits.

In order to decide the merits of this motion, reference must be made to the sales agreement that is attached to the complaint. On the front of the agreement, the following language appears above the space for the buyer's signature: "The provisions on the back of this page are a part of this contract. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS) EXCEPT AS PROVIDED TO THE REVERSE SIDE HEREOF." (emphasis in original) On the reverse side the following language appears in clear type:

> We warrant Products sold by us in accordance with our published specifications or those specifications agreed to by us in writing at time of sale. Our obligation and liability under this warranty is expressly limited to repairing or replacing, at our option, within six months after date of delivery any product not meeting the specifications. WE MAKE NO OTHER WARRANTY, EXPRESS OR IMPLIED, AND MAKE NO WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR ANY PARTICULAR PURPOSE. Our obligation under this Warranty shall not include any transportation charges or costs of installation or any liability for direct, indirect or consequential damage or delay. If requested by us, Products or parts for which a warranty claim is made are to be returned transportation prepaid to our factory. Any improper use, operation beyond rated capacity, substitution of parts not approved by us, or any alteration or repair by others in such manner as in our judgment affects the Product materially and adversely shall void this Warranty. NO EMPLOYEE OR REPRESENTATIVE IS AUTHORIZED TO CHANGE THIS WARRANTY IN ANY WAY OR GRANT ANY OTHER WARRANTY. (emphasis in original)

Because of the existence of this language in the agreement, plaintiff contends that only the allegation described in paragraph eight of the counterclaim and the damages claimed in paragraph 41(a) are maintainable by the defendants.

█ As the basis of jurisdiction in this suit is diversity of citizenship, this court must look to state substantive law, and the parties appear to agree that the applicable law is that of Michigan. Michigan has adopted the Uniform Commercial Code and as the transaction involved in this case was a sale of goods, the UCC governs this case. The inclusion of the above quoted language in the contract is authorized by Michigan Statutes Annotated §§ 19.2316 and 19.2719, M.C.L.A. §§ 440.2316, 440.2719.

§ 19.2316 reads in pertinent part as follows:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous . . .

.    .    .    .    .    .

(4) Remedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy. (Section 2718 and 2719)

§ 19.2719 reads as follows:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Defendants do not contest the effectiveness of the quoted language as of the time the agreement was signed. Rather, they contend that this language is no longer effective as a waiver of warranties or limitation of liability because of the subsequent conduct of the plaintiff in the performance of its responsibilities under the contract. Specifically, defendants allege that plaintiff did not complete delivery of the equipment until four months after the sales agreement was signed, and that plaintiff did not make repairs or replacements as required by the contract. Because of this conduct, defendants contend that the disclaimer of warranties and limitation of liabilities language should be set aside. They rely on M.S.A. § 19.2719(2) to support this position as they contend that the conduct of the plaintiff has caused the exclusive remedy of repair and replacement to fail of its essential purpose.

While the issues as formulated by the defendants refer only to the disclaimer of warranties, defendants' brief also speaks of the limitation of liability language. The two clauses must be considered separately with reference to the plaintiff's conduct alleged by the defendants. If the court were to find that the remedy of repair and replacement should not be the sole remedy available to the

buyer, it would not necessarily follow that the disclaimer of warranties should also be set aside. Thus, the buyer might be entitled to money damages, but only as to those damages that arose due to a breach in the express warranty that the goods would "be, in accordance with . . . published specifications or those specifications agreed . . . in writing at the time of sale."

■ Plaintiff contends that even if the exclusive remedy of repair and replacement is stricken from the contract, the buyer would not be entitled to consequential damages because the clause barring A.P.I. from consequential damages is independent of the clause relating to repair and replacement. Plaintiff takes the position that the only test for determining the validity of a clause excluding recovery of consequential damages is whether such a clause is unconscionable. It is clear that the consequential damages clause is independent of the disclaimer of warranties language. However, there is a substantial question as to whether it stands independently of the limitation of liabilities language or whether it should be treated as an elaboration of the limitation of liabilities language such that if the exclusive remedy of repair and replacement is avoided, so too would the exclusion of consequential damages be avoided.

Looking first to the clauses limiting the plaintiff's liability to repairing or replacing the goods and barring the recovery of consequential damages, the parties have cited no Michigan case that specifically deals with the problem before the court, and the court has not been able to discover any Michigan cases on point. However, other states have faced this problem and lacking any Michigan authority, the court will look to these cases for guidance.

In Adams v. J. I. Case Company, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970), the court refused to enforce a clause limiting the seller's liability, but did sustain a disclaimer of warranties clause. In this case, the seller breached its exclusive warranty to repair and replace defective parts of a crawler loader tractor and the court held that these circumstances demonstrated that the exclusive remedy failed and noted that "repudiation of the obligations of the warranty destroy its benefits."

Although the court upheld the disclaimer of warranties, they did allow one implied warranty to arise. The seller agreed to repair or replace defective parts. The court found an implied warranty for reasonably prompt and timely repairs despite the fact that the written warranty disclaimed all implied warranties. While the disclaimer was authorized and proper, the court said that the buyer would not have made the purchase with knowledge that the defendants would be unreasonable. The court made the following observations:

Had they reasonably complied with their agreement contained in the warranty they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy. The limitations of remedy and of liability are not separable from the obligations of the warranty . . . . It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them. . . . It is clear that an implied warranty for reasonably prompt and timely repairs upon breach of the express warranty may arise under (UCC 2–316). Though excluded by the written warranty as authorized in UCC Section 2–316, defendants' repudiation for failure to reasonably comply avoids the exclusion.

The plaintiff was allowed to recover consequential damages under UCC 2–714 and 2–715 even though the contract contained language which specifically excluded the recovery of consequential damages in addition to the language limiting the buyer's remedies to that of repair and replacement.

Plaintiff in the *Adams* case also asked the court to find that the goods were

sold with an implied warranty that the tractor was a good, satisfactory tractor capable of doing the work for which it was sold. However, the court found that such a warranty was expressly barred by the written warranty and that there were no allegations of facts or circumstances to justify the avoidance of the warranty language.

Thus the court found that the seller's breach of his duty to repair or replace parts gave rise to an implied warranty that this remedy would be timely complied with, although the court refused to set aside the disclaimer of implied warranties. This action can be understood as an attempt by the court to make the sole remedy available to the buyer meaningful. When the remedy was not complied with, the court found that it had failed of its essential purpose and allowed the buyer to avail himself of other remedies provided by the UCC.

In Jones & McKnight Corp. v. Birdsboro Corporation, 320 F.Supp. 39 (N.D. Ill., 1970), the court was faced with this same problem which was to be decided according to Pennsylvania law. The buyer in this case alleged that the seller had failed to deliver goods manufactured in a workmanlike manner and had then failed to repair or replace the goods as required by the contract. Buyer sought consequential damages. Seller moved for summary judgment on the basis that the sales agreement limited the seller's liability to that of repair and replacement and that the buyer was thus not entitled to consequential damages. As in *Adams* and the case at bar, the warranty included specific language barring consequential damages: "Vendor assumes no liability for consequential damages of any kind."

The buyer contended that the seller's willful and dilatory behavior in refusing to repair the goods amounted to an express repudiation of the seller's warranty obligation, thus destroying any benefits to the buyer under the warranty. Citing UCC 2–719(2), the buyer suggested that "because of the alleged failure of defendant to honor its limited lia-

bility under the warranty, the exclusive remedy has failed of its essential purpose and the warranty's limitation of remedy must be disregarded."

The court noted that only the *Adams* case had previously decided the question of whether under UCC 2–719(2) the alleged repudiation by a seller of its obligation under the warranty likewise deprived the seller of benefits under that warranty. The *Jones* court chose to follow *Adams* for the following reasons:

Although the plaintiff-buyer purchased and accepted the machinery and equipment with the apparent knowledge that the seller had properly limited its liability to repair or replacement, and although plaintiff does not allege any form of unconscionability in the transactions which led to the purchase, plaintiff also was entitled to assume that defendants would not be unreasonable or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment. It is the specific breach of the warranty to repair that plaintiff alleges caused the bulk of its damages. This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid. If the plaintiff is capable of sustaining its burden of proof as to the allegations it has made, the defendant will be deemed to have repudiated the warranty agreement so far as restricting plaintiff's remedies, and the exclusive remedy provision of the contract will be deemed under the circumstances to have failed of its essential purpose, thus allowing plaintiff the general array of remedies under the Code.

Plaintiff argues that even were the court to follow the *Adams* and *Jones* cases and hold that the defendants might be entitled to remedies not pro-

vided for in the contract, defendants should not be entitled to consequential damages. Plaintiff cites several cases which it feels support its position. As noted above, both the *Adams* and *Jones* cases allowed consequential damages in the face of a specific contractual bar.

One case cited by plaintiff is V–M Corp. v. Bernard Distributing Co., 447 F.2d 864 (7th Cir. 1971). Plaintiff believes that this case indicates a recent attitude in the Seventh Circuit to reject the rule of *Adams* and *Jones*. *V–M Corp.* involved an action by a manufacturer for goods sold and delivered pursuant to a distribution agreement wherein counterclaims were asserted by defendants for failure to supply quality goods. The manufacturer had warranted its product to be free from defective material and workmanship and agreed to repair or replace defective units. The agreement also provided that the manufacturer would in no event be liable for consequential damages. The court determined that in the circumstances of the case before it, the exclusive remedy to repair or replace had not failed of its essential purpose and thus defendants were not entitled to consequential damages. The court then went on as follows:

> Moreover, we are not persuaded that Section 2–719(2) otherwise requires the negation of the specific limitations of the contract. Section 2–719 was intended to encourage and facilitate consensual allocations of risks associated with the sale of goods. This is particularly true where commercial, rather than consumer goods are involved. Even where the defects of the goods cause substantial difficulties to those involved in wholesale and retail distribution, Section 2–719(2) need not automatically require disregard of the particular limitations upon liability specified by the contracting parties.

Plaintiff reads the above-quoted language as an indication that the Seventh Circuit now reads § 2–719(2) as not requiring the invalidation of a specific contractual provision precluding the recovery of consequential damages by the buyer where an exclusive remedy to repair or replace has failed of its essential purpose. This court does not agree with plaintiff's interpretation of the *V–M Corp.* case. The plaintiff has overlooked the following language which appears immediately subsequent to the above-quoted language:

> Here we cannot say that the defects in the quality of V–M's goods caused a failure of consideration for the distributorship agreement which would justify altering the particular allocation of these costs by making the manufacturer the insurer of distributor profits and extraordinary expenses. We see nothing in this record to justify protection of the distributor's profits or expenditures at the expense of the manufacturer's.

This court does not read this language as a retreat from the decisions in the *Adams* and *Jones* cases. Rather, this language alludes to a situation in which the seller fulfills its obligation to repair or replace but the buyer suffers substantial losses because the goods were in such a poor condition as to constitute a failure of consideration. The *V–M Corp.* court seems to say that in such a situation, even though the seller fulfills its obligations, a court could still find that the essential purpose of the remedy had failed. The Seventh Circuit did not think that the case before it presented such a situation. This court believes that a careful reading of the quoted language, taken in context, does not support the plaintiff's position.

However, plaintiff directs the court to County Asphalt, Inc. v. Lewis Welding & Engineering Corp., 323 F.Supp. 1300 (S.D.N.Y., 1970), aff'd 444 F.2d 372, cert. den. 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252, which case does support its position. *County Asphalt* was decided at about the same time as *Adams* and *Jones* but does not mention these cases. It was decided according to Ohio law, but the court said the result would have been the same under New York law.

This case is similar to the other cases discussed in this opinion as the sales contract included both a clause limiting the buyer's remedies to repair or replacement and a clause excluding consequential damages. The crucial part of the *County Asphalt* opinion is as follows:

> Plaintiff has alleged various breaches by defendant of the contracts at issue. If any of these breaches are proven to have occurred the circumstances of the parties then and now will render the exclusive remedy provided wholly inadequate. Therefore, if plaintiff is entitled to any remedy at all, it is entitled to whatever remedies would be available to it "if the * * * clause had never existed." (Citing the official comments to the Uniform Commercial Code) Indeed, to enforce the exclusivity of the "repair and replacement" remedy in the face of any of the breaches herein asserted would be to create an unconscionable result.
>
> Plaintiff would have UCC 2-719 read in such a fashion as to result in all limitations whatsoever being stricken in any event in which an exclusive remedy should fail of its essential purpose. A better reading is that the exclusive remedy clause should be ignored; other clauses limiting remedies in less drastic manners and on different theories would be left to stand or fall independently of the stricken clause. Since the clause excluding consequential damages has been held not unconscionable, and is not otherwise offensive, it will be applied. Therefore, plaintiff will still be allowed to obtain incidental damages, including "commercially reasonable charges, expenses, or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach," but excluding consequential damages.

Thus, the few courts who have faced the problem before this court are not in agreement as to the availability of consequential damages. Plaintiff also cited Fredonia Broadcasting Corp., Inc. v. RCA Corp., 481 F.2d 781 (5th Cir. 1973) and Council Bros., Inc. v. Ray Burner Company v. Burnham Corporation, 473 F.2d 400 (5th Cir. 1973) in support of its position. After reviewing these cases, this court does not find them to support the plaintiff, nor does the court find them particularly helpful in solving the present problem.

The holdings of the Seventh Circuit and the District Court in *County Asphalt*, although different, are both backed by appealing rationales. The *County Asphalt* holding has merit as the consequential damages clause was separate and independent from the repair and replacement clause. On the other hand, the Seventh Circuit cases are attractive since the buyer, when it entered into the contract, did not anticipate that the sole remedy available to it would be rendered a nullity, thus causing additional damages.

■ This court finds the reasoning of the *Adams* and *Jones* cases persuasive and believes that a Michigan court confronted with this question would also follow these cases and refuse to restrict the buyer to the exclusive remedy provided by the contract on a pre-trial motion to dismiss. At trial the defendants may be able to prove that the plaintiff's conduct was such as to make the remedy provided by the contract fail of its essential purpose. In deciding to follow the holdings of the *Adams* and *Jones* cases, this court feels that it would not be equitable to allow the seller to refuse to perform the one remedy available to the buyer and then be freed of any responsibility caused by this failure. In a sense, there are two breaches of the contract; the first being the failure to deliver goods conforming to the express warranty, and the second being the failure to correct the nonconformity as was promised in the party's agreement.

■ In plaintiff's third brief, submitted to the court on the day of hearing, two other arguments are presented in support of its motion to dismiss parts of the counterclaim. One argument is

that even if the plaintiff failed to repair or replace any product not meeting the specifications, the plaintiff's failure was not wilfully dilatory. Although defendants might not be entitled to additional remedies if they fail to prove that plaintiff failed to repair and such failure was wilfully dilatory, a determination of this issue cannot be made on a motion to dismiss as it concerns questions of fact.

■ The second argument of the plaintiff is that even if it wilfully failed to repair or replace any product not meeting the specifications, the failure was permitted by reason of defendant's failure to make payment for the equipment. The court offers no opinion on this argument at this time since the argument was not timely presented to the court or to opposing counsel who had no time to prepare a response. The court also notes that plaintiff has subsequently filed a motion for summary judgment in which it presents this argument and the court can dispose of this argument on that motion.

Defendants also ask this court to disregard the disclaimer of warranties language in the sales agreement. As previously noted, the conduct that obviates the limitation of liability clause, does not necessarily obviate the disclaimer of warranties language. In fact, the court in *Adams* expressly found otherwise.

Plaintiff followed the provisions of the UCC in putting the disclaimer language in the contract. (UCC 2–316) The contract was between two corporations and for a commercial purpose. The language was clear, the typeface large, and the clause was placed in the contract at a place to be noticed by the buyer. If in fact the plaintiff failed to repair or replace as provided in the contract, this conduct would not be such as to render the disclaimer of warranties language ineffective. UCC 2–719(2) applies to limitation of liability, not to disclaimer of warranties.

■ There is some question whether language that complies with UCC 2–316

could be unconscionable under 2–302. There is also an argument that unconscionable conduct which obviates a limitation of liability clause under UCC 2–719(3) would also obviate a disclaimer of warranties clause under that same section. See Uniform Commercial Code, White and Summers (West Publishing Co., 1972). If there is some conduct that could render a disclaimer of warranties ineffective in a commercial setting, such conduct is not present in the case at bar. At trial, the defendants will not be allowed to recover damages that otherwise would have been recoverable but for the disclaimer of warranties language in the contract.

Defendants cite Vlases v. Montgomery Ward & Company, 377 F.2d 846 (3rd Cir. 1967) in support of their contention that the disclaimer of warranties language should be set aside. However, *Vlases* concerned an individual dealing with a large corporation. A more important distinction is that *Vlases* concerned a transaction in which the goods delivered were absolutely worthless. The seller in that case sold the buyer, a man just starting out in the poultry business, chicks that had various diseases. It should be noted that the following language of the court, relied on by the defendants, was dicta.

> Even a provision specifically disclaiming any warranty against avian leukosis would not necessarily call for the defendant's freedom from liability. Section 1–102(3) of the Code's General Provisions states that standards which are manifestly unreasonable may not be disclaimed and prevents the enforcement of unconscionable sales where, as in this instance, the goods exchanged are found to be totally worthless.

The goods delivered in the case at bar are not totally worthless for any purpose, as presumably the goods could be repaired to fulfill some function, even though not the function contemplated by the defendants. When the seller disclaimed all implied warranties, it ex-

pressly stated that it did not guarantee that the goods would fulfill the function contemplated by the buyer.

The defendants also raise objection to the six-month time limitation during which the seller is obligated to repair or replace defective goods. The contract provided that the seller would be obligated to repair or replace any goods not meeting the specifications within six months of the date of delivery. Defendants claim that in this case the six-month limitation was unreasonable as they did not in fact have the six months in which to discover latent defects, and thus the limitation of liabilities language should be disregarded. Defendants cite Neville Chemical Company v. Union Carbide Corporation, 294 F.Supp. 649 (W.D.Pa.1968) in support of this contention. The court need not determine the reasonableness of the time limitation at the present time as the question of when the six month period began to run can be better settled at trial, if necessary, and the court has already disregarded the limitation of liabilities language. However, in passing, the court notes that *Neville* dealt with a fifteen-day limitation in a situation in which it would have been practically impossible for the buyer to discover latent defects within the time period. In these circumstances, the court found that the time limit was manifestly unreasonable under UCC 1-204 and thus invalid and that a contractual limitation of damages to recovery of the purchase price was illusory and ineffective under UCC 2-719(2). At this time, this court merely notes that *Neville* is not strictly analogous to the case at bar.

Mention is also made by the defendants of delay in the actual delivery of the goods. Plaintiff contends that the defendants are not entitled to recover damages due to the alleged delay. It would be difficult for the court to determine at this time which of the damages alleged by the defendants resulted from delay in delivery. The copy of the sales agreement submitted to the court is partially illegible, but the court can discover no date specified as the delivery date. However, the contract does state that the buyer acknowledges receipt of the items sold under the contract. At any rate, the court believes that the issue of delay and any damages resulting therefrom would be better settled at trial than on a motion to dismiss. But the court does note that the same clause which bars consequential damages, also bars damages due to delay.

In plaintiff's supplemental brief in support of its motion to dismiss parts of the counterclaim, it notes that the defendants seem to rely on "certain warranties, promises, condition and contractual obligations" which are outside of the written agreement of the parties. Plaintiff believes that the parol evidence rule precludes the defendants from relying on such agreements to prove a breach of contract. In making a decision on plaintiff's motion to dismiss, the court has considered no evidence of agreements outside of the written agreement. If at trial, the defendants allude to such agreements, plaintiffs can raise their objection at that time.

The defendants' counterclaim consists of forty-one paragraphs. It is possible that some of these claims are not allowable because they rely on an alleged breach of a warranty disclaimed by the seller. But at this time the court does not have sufficient information from which to decide which of the damages arose due to the failure of the goods to conform to the seller's specifications and which arose from other causes. Rather than require the parties to submit additional information, the court believes that the better procedure is to deny the motion to dismiss parts of the counterclaim and to decide these issues, which may prove to be quite complicated, at trial.

Plaintiff's motion to dismiss parts of the counterclaim is denied. An appropriate order may be submitted.