**CATERPILLAR TRACTOR COMPANY**
*v.* Angel P. WATERSON

CA 84-68                                    679 S.W.2d 814

Court of Appeals of Arkansas
Division II
Opinion delivered November 28, 1984

*Friday, Eldredge & Clark,* by: *James M. Simpson,* for appellant.

*Davis, Cox & Wright,* by: *Constance E. Clark,* for appellee.

DONALD L. CORBIN, Judge. This suit was instituted by E. A. Martin Machinery Company against appellee, Ancel P. Waterson, to collect the balance due on a promissory note covering the purchase price on a Caterpillar D-5 bulldozer. Appellee filed a counterclaim against E. A. Martin Machinery Company and a third-party complaint against appellant, Caterpillar Tractor Company, alleging breach of express and implied warranties. He sought damages of $50,000.00. At trial, E. A. Martin Machinery Company and appellee dismissed their respective claims against each other and appellee returned the D-5 bulldozer to E. A. Martin Machinery Company. Appellee pursued his third-party action against appellant on the theory of breach of express warranty. Appellant defended, contending that language in its written warranty limited appellee's remedy to repair or to

replacement of defective parts and excluded liability for any other damages.

The jury returned a general verdict for appellee, fixing his damages at $35,000.00. Appellant appeals on the grounds that the trial court erred in instructing the jury on lost profits and on the issue of unconscionability or failure of essential purpose. We affirm.

Appellee ordered the D-5 Caterpillar bulldozer by filling out a customer purchase order given to him by the dealer, E. A. Martin Machinery Company. The original purchase order was a one page document with printing on both the front and back. In general, the purchase order provided that appellant warranted the product sold to be free from defects in material and workmanship for six months after date of delivery and limited appellant's express obligation to the repair or replacement of any defective parts and provided that the warranty was in lieu of all other express or implied warranties and barred liability for incidental, consequential or special damages arising from defects in material and workmanship. Appellee signed the purchase order indicating he had carefully read the instrument and was acquainted with its contents.

Appellee testified that the dozer had an annoying, almost constant vibration from the very day it was delivered, a vibration that nearly "drove you out of your mind." He testified that despite numerous attempts to correct the problem, neither E. A. Martin Machinery Company nor appellant could pinpoint or eliminate the vibration. Leroy McDonald and James Moore, experienced heavy equipment operators employed by appellee, testified that they noticed the dozer's vibration and pointed it out to E. A. Martin Machinery Company and appellant's representatives. Both men stated that the vibration on the dozer was much greater than that normally felt when operating heavy construction equipment.

Loren Niblett, a bulldozer mechanic employed by E. A. Martin Machinery Company, investigated appellee's complaints about the dozer and confirmed that the machine had

an abnormal vibration. It was his opinion that the vibration was a result of a defect in material and workmanship at the Caterpillar factory. Jerry Ford, another witness for appellee, explained that appellee hired him to tear down the dozer in an attempt to discover the cause of its problems. In the process of tearing down the machine, he discovered that the dozer's rear thrust bearings were installed backwards, the side marked "block side" being turned away from the block. Jerry Ford also testified that the vibration in this bulldozer was certainly abnormal and, in his opinion, was a defect in material and workmanship. He stated that the dozer's value with the vibration problem was $35,000.00 or $36,000.00 at the time of its purchase by appellee.

In addition to the vibration problem, the record reflects that appellee experienced other problems with the dozer which required replacement or repair of the following parts: starter, head gasket, hydraulic hoses, flex coupling, yoke, gaskets and seals.

Appellee had the dozer for approximately twenty months and at the date of trial when the dozer was returned to E. A. Martin Machinery Company, it had approximately 1,400 hours of use on it. Appellee estimated that the dozer was down a total of 68 days during this time and stated that the net profit per day amounted to $161.58 for a total loss of profits of $10,987.48. Evidence adduced at trial established that appellee purchased the D-5 bulldozer at a price of $71,264.67 and was credited with $23,264.67 for a trade-in. A balance of $48,000.00 was to be paid by appellee in monthly installments. Appellee testified that upon return of the dozer to E. A. Martin Machinery Company, he had paid $14,613.72 on the balance of the note. Appellee also testified that in his opinion the fair market value for the machine for the condition it was in when he purchased it was $20,000.00.

Appellant argues in its first point for reversal that the trial court erred in instructing the jury on lost profits. In this regard, appellant contends that the language contained in the purchase order effectively limited appellee's recovery to repair or replacement of defective parts and relies upon the holding of the Arkansas Supreme Court in the case of

*Gramling* v. *Baltz,* 253 Ark. 361, 485 S.W.2d 183 (1972), and a United States Court of Appeals case, *Cryogenic Equipment Inc.* v. *Southern Nitrogen, Inc.,* 490 F. 2d 696 (8th Cir. 1974). In *Gramling, supra,* the Arkansas Supreme Court impliedly recognized that liability for consequential damages can be limited by "clear and unmistakeable language." The Court there held that the trial court erred in refusing to admit plaintiff's testimony concerning consequential damages in the nature of lost profits because such damages were not properly limited or excluded in the manufacturer's warranty. We believe this case is distinguishable in that the question was whether plaintiff had made a *prima facie* case for the jury on the issues of breach of express and implied warranties and the failure of the remedy's essential purpose was not before that Court as it is in the case at bar. Appellant's reliance upon *Cryogenic Equipment, Inc., supra,* is also misplaced. In upholding a disclaimer of liability for loss of profits in that case, the court held that the disclaimer of liability was not unconscionable in view of the expertise of both parties and in view of the absence of any evidence of a disparity of bargaining power between the parties. The issue of failure of the remedy's essential purpose was not addressed by the *Cryogenic* court.

Under the Uniform Commercial Code, a seller of goods may limit his contractual liability in two ways. He may disclaim or limit his warranties, pursuant to Ark. Stat. Ann. § 85-2-316 (Supp. 1983), or he may limit the buyer's remedies for a breach of warranty, pursuant to Ark. Stat. Ann. § 85-2-719 (Add. 1961). These methods are closely related, and in many cases their effect may be substantially identical. White and Summers, *Handbook of the Law Under the Uniform Commercial Code* (Hornbook Series, 1980), § 12-8, p. 462. A disclaimer of warranties limits the seller's liability by reducing the number of circumstances in which the seller will be in breach of the contract; it precludes the existence of a cause of action. A limitation of remedies, on the other hand, restricts the remedies available to the buyer once a breach is established. White and Summers, *supra,* § 12-11, pp. 471, 472.

In the case at bar we believe the language contained in

appellant's purchase order is an attempt to both disclaim warranties and limit the remedies available to the buyer upon breach.

It is clear under Arkansas law that parties to a contract may limit or alter the measure of damages recoverable by limiting the buyer's remedies to repair and replacement of non-conforming goods or parts. Ark. Stat. Ann. § 85-2-719(1)(a); *Kohlenberger* v. *Tyson's Foods*, 256 Ark. 584, 510 S.W.2d 555 (1974). The purpose of an exclusive remedy of replacement or repair of defective parts is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise. From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. When the warrantor fails to correct the defect as promised within a reasonable time he is liable for a breach of that warranty.

In its argument appellant overlooks language in § 85-2-719 which qualifies its rights to limit or alter appellee's remedies. It is clear that limitations on remedies and damages permissible under § 85-2-719 (1)(a) are subject to § 85-2-719(2), which provides:

> Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

The rationale underlying § 85-2-719(2) is adequately stated by the court in *Jones & McKnight Corp.* v. *Birdsboro Corp.*, 320 F. Supp. 39 (N.D.Ill. 1970), as follows:

> This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid.

*Soo Line R. Co.* v. *Fruehauf Corp.*, 547 F.2d 1365, 1370 (8th Cir. 1977).

Section 85-2-719(2) is to apply whenever an exclusive remedy, which may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances operates to deprive a party of a substantial benefit of the bargain. See Committee Comment 1. Where the seller is given reasonable opportunity to correct the defect or defects, and the machinery nevertheless fails to operate as should new machinery free of defects, the limited remedy fails of its essential purpose. *Soo Line R. Co., supra; Koehring Co.* v. *A.P.I., Inc.,* 369 F.Supp. 882 (E.D.Mich. 1974); *Jones & McKnight Corp., supra; Kohlenberger, supra; Adams* v. *J. I. Case Co.,* 125 Ill.App.2d 388, 261 N.E.2d 1 (1970). It makes no difference that the transaction was between commercial parties. We are not dealing with unconscionability or disparity of bargaining power under the facts of this case, but whether a party was deprived of a substantial benefit of the bargain. Other courts have found a contract to have failed of its essential purpose in commercial settings and applied § 2-719(2). See, *Soo Line R. Co., supra* (sale of 500 covered hopper freight railroad cars); *Beal* v. *General Motors Corp.,* 354 F.Supp. 423 (D.Del. 1973) (extra-heavy tonnage diesel tractor for trucking); *Jones & McKnight Corp., supra* (automated machinery and equipment); *Adams, supra* (crawler tractor for contracting business). Upon failure of the limited remedy's essential purpose, the purchaser is then entitled to any of the buyer's remedies provided by the Code. Among these remedies are consequential damages as provided in Ark. Stat. Ann. §§ 85-2-714 and 85-2-715(2) (Add. 1961). See, *Hartzell* v. *Justus Co., Inc.,* 693 F.2d 770 (8th Cir. 1982); *Riley* v. *Ford Motor Co.,* 442 F.2d 670 (5th Cir. 1971). Section 85-2-714 deals with the remedies available to the buyer for breach in regard to accepted goods. The most commonly applied formula for damages is stated in this section which gives the buyer "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Ark. Stat. Ann. § 85-2-714(2). Also, "[i]n a proper case any incidental and

consequential damages under the next section may also be recovered." Ark. Stat. Ann. § 85-2-714(3). The next section, Ark. Stat. Ann. § 85-2-715(2), provides in part: "Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;" The most commonly litigated and sought-after item of consequential damages is lost profits. White and Summers, *supra,* § 10-4, p. 391.

In order to ascertain the propriety of the trial court's instructions in the case at bar, they are set out in full as follows:

### No. 10

The Defendant, Caterpillar Tractor Company, has raised the defense that the remedies of Ancel Waterson are limited to the repair or replacement of such parts as shall appear to have been defective in material or workmanship, and that he is not otherwise entitled to recover damages. The law allows damages to be limited by warranty if done in clear language, was part of the basis of the bargain, and was known or reasonably should have been known to both parties. Further, you are advised that it is of the very essence of a sales contract that at least minimum adequate remedies be available. Parties to a contract must accept the legal consequence that there be at least a fair remedy for breach of the obligation or duties outlined in the contract. Thus, where circumstances cause an exclusive or limited remedy set forth in the contract to fail of its essential purpose, or operates to deprive either party of the substantial value of his bargain, the limitation of remedy is void and of no effect whatsoever.

### No. 11

If you find that the remedy was effectively limited and did not fail of its essential purpose, then your

verdict must be for the defendant, Caterpillar Tractor Company.

## No. 12

On the other hand, if you find that Caterpillar Tractor Company is liable for breach of warranty and has not effectively limited Plaintiff Ancel Waterson's remedies, you must then fix the amount of damages to which Ancel Waterson is entitled. You are advised that the measure of damages for breach of warranty in this case is the difference at the time and place of acceptance between the value of the D5 Caterpillar tractor as it was accepted and the value the D5 Caterpillar tractor would have had if it had been as warranted. Further, you may award as damages the profits lost by Ancel Waterson as a foreseeable result of such breach of warranty.

In applying the law to the facts of this case, we believe the question of whether the exclusive remedy provided in appellant's warranty failed of its essential purpose was properly submitted to the jury by Instruction No. 10. Much of the language contained therein came from the official commentary following Ark. Stat. Ann. § 85-2-719. The instructions as a whole are correct under the law and effectively required a finding that appellant's repair and replacement clause failed of its essential purpose before the jury could award damages, including damages for lost profits. Accordingly, we reject appellant's argument that the trial court erroneously instructed the jury on lost profits. Appellee was entitled under Ark. Stat. Ann. § 85-2-719(2), to any of the buyer's remedies provided by the Code upon establishing appellant's repair and replacement clause failed of its essential purpose.

In its second point for reversal, appellant contends the trial court erred in instructing the jury on the issue of unconscionability or failure of essential purpose. We have addressed the issue of failure of essential purpose in our discussion of appellant's first point for reversal and held that it was proper to instruct the jury on failure of essential purpose where the evidence established that appellant was

in breach of warranty. Therefore, our discussion of appellant's second point for reversal will be limited to only the issue of unconscionability. Appellant argues that the following language in Instruction No. 10 attempted to define the doctrine of unconscionability:

> Thus, where circumstances cause an exclusive or limited remedy set forth in the contract to fail of its essential purpose, or operates to deprive either party of the substantial value of his bargain, the limitation of remedy is void and of no effect whatsoever.

Appellant's interpretation of this portion of the instruction is incorrect. The above language, taken in part from the official commentary following Ark. Stat. Ann. § 85-2-719, is clearly concerned with failure of essential purpose and not unconscionability. As stated previously in this opinion, if the buyer is deprived of the substantial value of his bargain, the limitation of remedy is deemed to have failed of its essential purpose. Ark. Stat. Ann. § 85-2-719(3) provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

From our reading of the above provision in conjunction with § 85-2-719(2) and the official commentary, it is evident that an otherwise valid limitation of remedy contained in a contract is avoided by the buyer if the limitation fails of its essential purpose or is unconscionable. If either situation is found, the buyer is entitled to any of his remedies provided by the Code.

In *Hartzell, supra*, the buyer of a log home construction kit brought a breach of warranty and negligence action against the manufacturer-seller of the kit to recover for damages for loss in value of the home due to defects and for cost of repairs. In affirming a jury verdict in favor of the buyer in the amount of $39,794.67, the Court of Appeals

held, among other things, that the district court was not required to have made a determination that the limitation of warranties clause was unconscionable before submitting any issue of consequential damages to the jury. There, the evidence established that the repair or replacement clause was a failure and the buyer was entitled to any of the buyer's remedies provided by the Code among which were consequential damages. The Court stated that "A finding of unconscionability is, as a matter of logic, simply unnecessary in cases where § 2-719(2) applies."

In the case at bar, Ark. Stat. Ann. § 85-2-719(2) applied and the trial court properly instructed the jury on the issue of failure of essential purpose. The question of unconscionability pursuant to § 85-2-719(3) was not addressed by the clear language of Instruction No. 10 and we find no merit to this argument.

Affirmed.

COOPER and CLONINGER, JJ., agree.