GREAT DANE TRAILER SALES, INC. *v.* MALVERN PULPWOOD, INC.

89-179                                                    785 S.W.2d 13

Supreme Court of Arkansas
Opinion delivered February 26, 1990

438

*Wright, Lindsey & Jennings*, for appellant.

*Hardin & Grace*, for appellee.

TOM GLAZE, Justice. Appellee, Malvern Pulpwood, Inc., is a wood cutting facility which transports pulpwood by trucks and trailers to commercial mills. Appellant, Great Dane Trailer Sales, Inc. (Great Dane), is in the business of manufacturing and selling a wide variety of trailers. This litigation involves Malvern Pulpwood's initial purchase from Great Dane of two drop-deck, 65,000 pound weight-rated pulpwood trailers. Great Dane issued warranties on the trailers which were limited to the repair or replacement of defective parts and remedies were limited by the exclusion of consequential and incidental damages. The drop-deck trailers exhibited serious defects, as did their replacements, two straight-deck trailers. Malvern Pulpwood filed suit for breach of the warranties of merchantability and fitness for particular purpose, and Great Dane defended on the basis of its "repair or replacement" warranty and disclaimer. Great Dane also argued that Malvern Pulpwood was barred from bringing its claim against Great Dane in this state action because Malvern Pulpwood failed, as is required by the Bankruptcy Code, to schedule the claim in Malvern Pulpwood's Chapter 11 proceeding filed in 1987. Prior to trial, the trial court considered Great Dane's defenses and denied its motion for summary judgment. The matter was then submitted to a jury trial which resulted in a $40,000 verdict in favor of Malvern Pulpwood. Great Dane raises four points for reversal on appeal, but we find none requiring reversal.

First, Great Dane notes that Malvern Pulpwood had its

warranty claim prior to, and at the time, Malvern Pulpwood filed its Chapter 11 bankruptcy petition on October 8, 1987. Nevertheless, Malvern Pulpwood failed to list the claim on its schedule of assets, and when the bankruptcy court entered its order confirming the reorganization plan, Malvern Pulpwood, Great Dane argues, was barred from proceeding against it on the claim. We disagree.

When Malvern Pulpwood filed its Chapter 11 proceeding, Great Dane was not a creditor of Malvern Pulpwood nor was it named as a party in any capacity. Nonetheless, Great Dane asserts a right to use that bankruptcy proceeding to bar Malvern Pulpwood from suing it. In order for a federal court judgment to be *res judicata* in an action in a state court the parties must be the same; the judgment is conclusive only as against parties or their privies or others who sufficiently participate, or are represented, in the action and it is not binding on strangers. *See* 50 C.J.S. Judgments § 901b (1947); *Cf. Bailey* v. *Harris Brake Fire Protection Dist.*, 287 Ark. 268, 697 S.W.2d 916 (1985); *Carl* v. *Elizabeth Hospital*, 204 Ark. 716, 164 S.W.2d 432 (1942). In *Bailey*, we discussed *res judicata* and its claim preclusion facet, stating that it bars not only relitigation of issues actually litigated in the first suit, but also those which could have been litigated but were not. The court further explained that claim preclusion bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment, (2) the first suit was based upon proper jurisdiction, (3) the first suit was fully contested in good faith, (4) both suits involve the same claim or cause of action, and (5) both suits involve the same parties or their privies. *See also Lovell* v. *Mixon*, 719 F.2d 1373 (8th Cir. 1983). Here, Great Dane was neither a party nor a privy to one of the parties in the earlier bankruptcy proceeding. That being so, Great Dane is unable to rely upon *res judicata* to bar Malvern Pulpwood's suit against it.

Great Dane cites a number of federal decisions, but we find none of them controlling. It relies largely on the cases of *In re Emmer Bros. Co.*, 52 B.R. 385 (D.C. 1985) and *Stein* v. *United Artists Corp.*, 691 F.2d 885 (9th Cir. 1982). In *Emmer*, a creditor bank had entered into a settlement with a Chapter 11 debtor, but later discovered the debtor had failed to disclose or schedule an interest in an antitrust suit. The bank, alleging misrepresentations on the debtor's part, requested that the bankruptcy court

rescind the prior settlement or award it damages. The bankruptcy court ruled the bank's claim was barred as a matter of law, but the federal district court reversed, rejecting, among other things, the debtor's argument that the bank's action was an impermissible collateral attack on the bankruptcy court's order of confirmation. The district court concluded that the bank's action was permissible under the circumstances because the antitrust claim had been undisclosed and, therefore, was not "properly dealt with by the plan" under 11 U.S.C. § 1141(c). It further stated that the doctrines of *res judicata* and collateral estoppel would not bar such an action, at least when the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement.

Unlike Great Dane's situation here, the bank in *Emmer* was a creditor of the debtor, and, as a named party, had a stake in the Chapter 11 proceeding. We also point out that in *Emmer*, the court was dealing with the bank's allegations of fraud, which under some circumstances permit a party with standing to attack collaterally a prior final judgment. Great Dane, on the other hand, has never alleged that Malvern Pulpwood committed fraud in this matter or that the confirmation order of the bankruptcy court was void for that or any other reason. For that matter, we are unaware of anyone, including Chapter 11 creditors, who claims fraud of any kind on Malvern Pulpwood's part.[1]

Great Dane also relies upon the *Stein* case wherein the court concluded that the Chapter 11 debtor, having failed to list its antitrust claim against United Artists and others, could not enforce the claim after the bankruptcy court entered its confirmation order. In *Stein*, however, no one raised or argued the *res judicata* and standing issues that we consider here, and for this

---

[1] At this point, we should mention that Malvern Pulpwood apparently requested, and the bankruptcy court granted, modification of the plan to include the claim against Great Dane. This action occurred after Malvern Pulpwood obtained its judgment against Great Dane, and while Malvern Pulpwood included the modification motion and order in its supplemental abstract, it was never properly made a part of the record in this case. We agree with Great Dane that the motion and order should be striken, and it is not considered in reaching the court's holding.

reason alone, we find that decision unpersuasive.[2]

Great Dane's next point is that the trial court erred in failing to grant its motions for summary judgment and directed verdict because the parties contractually excluded all remedies except to repair or replace defective parts. Malvern Pulpwood responds, claiming that, while an express warranty excluded all implied warranties, the express warranty failed of its essential purpose, thereby entitling Malvern Pulpwood to the general remedy provisions of Article 2.

Under Ark. Code Ann. § 4-2-719 (1987), parties to an agreement may limit the buyer's remedies to the repair and replacement of nonconforming goods or parts and to make the remedy agreed upon the sole remedy, unless circumstances cause the exclusive or limited remedy to fail of its essential purpose. *See Kohlenberger* v. *Tyson's Food*, 256 Ark. 584, 510 S.W.2d 555 (1974); *Caterpillar Tractor Co.* v. *Waterson*, 13 Ark. App. 77, 679 S.W.2d 814 (1984). When there is substantial evidence tending to show that a particular piece of machinery obviously cannot be repaired or its parts replaced so that it is made free of defects, a jury verdict, which implicitly concludes that a limitation of the remedy to the repair and replacement of nonconforming parts deprived the purchaser of the substantial value of the bargain, should be sustained. *Kohlenberger*, 256 Ark. at 600, 510 S.W.2d at 566. Such a limited remedy fails whenever the warrantor, given the opportunity to do so, fails to correct the defect within a reasonable period. *Id.*

In connection with the sale of two drop-deck trailers sold to Malvern Pulpwood, Great Dane offered the following warranty:

> Great Dane Trailers, Inc.'s sole obligation under this warranty shall be limited to the repair or replacement, at its option, of any defective part of said trailer which is the result of defective materials and/or defective workmanship of parts furnished and installed by Great Dane

---

[2] Great Dane, in its answer, affirmatively alleged that Malvern Pulpwood's action was barred by the principles of *res judicata*, estoppel and laches because Malvern Pulpwood failed to schedule the claim it had against Great Dane. Nothing in the abstract reflects the reason the trial court rejected Great Dane's motion for summary judgment or directed verdict on this issue.

Trailers, Inc. This warranty will expire sixty (60) months from date of delivery to the purchaser, and repairs under this warranty shall be at repair facilities designated by Great Dane Trailers, Inc. Transportation expenses to the repair facility are to be borne by the purchasers.

THE EXPRESS WARRANTY HEREIN IS IN LIEU OF ANY AND ALL OTHER WARRANTIES, EX-PRESSED OR IMPLIED, NO IMPLIED WAR-RANTY OF MERCHANTABILITY IS MADE AND THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF.

Although the foregoing five-year warranty was given to repair or replace the 65,000 pound GVWC rated drop-deck trailers, we believe the evidence sufficiently shows the limitation failed of its essential purpose. The drop-deck trailers were described as ten-year trailers with a five-year warranty. Both drop-deck trailers "broke" in the same spot within one year from the time Malvern Pulpwood acquired them. Malvern Pulpwood offered testimony that Great Dane's repair job was sloppy and rendered the trailers unsafe. One witness, a welder, stated he did not believe the repairs would fix the trailers; he said that any time steel is welded, the steel would not be as strong as it was before. Great Dane finally replaced the drop-deck trailers with straight-deck trailers. Nevertheless, the replacements, too, broke in the same spot as the drop-deck trailers. In its case, Great Dane offered evidence opposing Malvern Pulpwood's claims, but even though such countervailing evidence was there for the jury to consider, we have no doubts that substantial evidence existed to support Malvern Pulpwood's claims that Great Dane failed to correct the trailers' defects within a reasonable period and that the limitation failed of its essential purpose.

Next, Great Dane argues that there was no implied warranty of fitness for a particular purpose—the basis for Malvern Pulpwood's recovery. Again, we must disagree.

To recover for breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove that (1) he has sustained damages; (2) at the time of contracting, the defendant had reason to know the particular purpose for which the product

was required; (3) the defendant knew the buyer was relying on defendant's skill or judgment to select or furnish the product; (4) the product was not fit for the purpose for which it was required; (5) this unfitness was a proximate cause of plaintiff's damages; and (6) plaintiff was a person whom defendant would reasonably have expected to use the product. *E.I. Dupont De Nemours & Co.* v. *Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983).

Great Dane contends that it was aware only of the ordinary purpose to which the pulpwood trailers would be used—hauling pulpwood—and was unaware of any other purpose. Great Dane, in citing *Berkeley Pump Co.* v. *Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983), states that before it can be liable for a breach of the warranty of fitness for a particular purpose, it must be shown it, as a supplier, knew that a particular purpose was intended by the consumer, Malvern Pulpwood. Instead, Great Dane asserts only the ordinary purpose for which the trailers would be used was shown, giving rise to a warranty of merchantability—a warranty which was not incorporated in the instructions given the jury.

Great Dane's argument overlooks the fact that, under the circumstances of the case, the particular purpose involved was pulpwood hauling. If the particular purpose for which goods are to be used coincides with their general functional use, the implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability. *Beech Aircraft Corp.* v. *Flexible Tubing Corp.*, 270 F.Supp. 548 (D. Conn. 1967). Such a holding is certainly consistent with the general rule in Ark. Code Ann. § 4-2-317 (1987), which provides that warranties, express or implied, shall be construed as consistent with each other and as cumulative.

Great Dane further argues that no implied warranty exists because Malvern Pulpwood, in purchasing the trailers, relied upon its president, Joe Gage, rather than upon the skill or judgment of Great Dane. Again, our review of the record reflects evidence that, depending upon how one views it, supports the opposing views of both parties on this issue. Nonetheless, we believe the evidence is more than sufficient to show Malvern Pulpwood justifiably relied upon Great Dane's judgment in furnishing a suitable trailer and supports the jury's verdict which

implicitly finds a breach of implied warranty that the trailers were fit for a particular purpose.

In sum, Mr. Gage, when reading a logging magazine, learned that Great Dane sold drop-deck trailers and provided a five-year warranty. Gage was interested in drop-deck trailers because they had a low center of gravity and were safer. He also looked for a low profile trailer which had a 65,000 pound GVWR, and when he contacted Great Dane, he gave it the specifications he wanted in such a trailer. In return, Great Dane furnished Gage the specifications as well as pictures of the Great Dane drop-deck trailers. Although Gage had built certain pulpwood trailers in the past, he had no experience regarding the Great Dane trailers, and he obtained both specifications and pictures from Great Dane's salesman before ordering the trailers. As previously noted, the trailers failed; they could never haul more than 55,000 pounds and each trailer—two drop-deck and two straight-deck replacements—broke in the same spot, thereby indicating a defect in design, which proved, considering the evidence, more than what Great Dane could correct.

Finally, Great Dane urges that, even if Malvern Pulpwood prevails on its implied warranty claim, Malvern Pulpwood still may not recover consequential damages. *See* Ark. Code Ann. §§ 4-2-715 to -2-719(2)(3) (1987). Malvern Pulpwood agrees with Great Dane that the courts are divided on the issue as to whether an exclusive remedy's failure under § 4-2-719(2) also leads to buyer consequential damages under § 4-2-715. Arkansas case law indicates consequential damages are recoverable upon the failure of a limited remedy's essential purpose. *See Kohlenberger*, 256 Ark. 584, 510 S.W.2d 555; *Caterpillar Tractor Co.*, 13 Ark. App. 77, 679 S.W.2d 814. In *Kohlenberger*, we stated, quoting with approval from *Adams* v. *J. I. Case Co.*, 125 Ill. App. 2d 388, 261 N.E.2d 1 (1970), as follows:

The manufacturer and the dealer have agreed in their warranty to repair or replace defective parts while also limiting their liability to that extent. Had they reasonably complied with their agreement contained in the warranty they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy. The limitations of remedy and of liability are not

separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroy its benefits. The complaint alleges facts that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful failure or their careless and negligent compliance. It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them.

From the above, we hold that, upon failure of Great Dane's limited remedy's essential purpose, Malvern Pulpwood was then entitled to any of the buyer's remedies provided by the Code, and included among them are consequential damages provided in § 4-2-715.

In this final point, Great Dane also submits that Malvern Pulpwood's proof on damages was insufficient and speculative. This argument is without merit. The damage instruction was submitted to the jury without objection. The jury was told to award as damages the profits Malvern Pulpwood may have lost as a foreseeable result of the warranty breach. It was also instructed that the measure of damages for a warranty breach in this case is the difference at the time and place of acceptance of the trailers between the value of two Great Dane drop-deck pulpwood trailers, or equivalent, as they were accepted and the value the two trailers would have had if they had been as warrantied. Malvern Pulpwood presented sufficient value testimony to support its claims. In fact, Malvern Pulpwood offered proof of damages as to each of the elements described in the sum of over $44,000. The jury awarded $40,000, a sum clearly justified by the evidence.

For the reasons given above, we find no error and hold the jury verdict should be sustained.