**In re JR. FOOD MART OF ARKANSAS, INC.**

**JR. FOOD MART OF ARKANSAS, INC., Plaintiff,**

**v.**

**T.A. BONE, INC. and Jim Bone, Inc., Defendants.**

**Bankruptcy No. PB 90–419S.
Adv. No. 91–5052.**

United States Bankruptcy Court, E.D. Arkansas, Pine Bluff Division.

Oct. 17, 1991.

---

916

Allen Bird, II, Little Rock, Ark., for debtor.

Fletcher Long, Forrest City, Ark., JoAnn Goldman, Little Rock, Ark., for U.S. Trustee.

## ORDER AND DIRECTIVE TO DEBTOR TO FILE AFFIDAVIT

MARY D. SCOTT, Bankruptcy Judge.

The matter before the Court is a Complaint filed by Jr. Food Mart of Arkansas, Inc. ("plaintiff," "debtor," or "Jr. Food Mart") against T.A. Bone, Inc. and Jim Bone, Inc. ("defendants"). The complaint concerns a contract between the parties in which debtor is obligated to purchase gasoline from defendants. Debtor sues for partial breach of contract and asks the Court to sever and rescind the part of the contract that defendants allegedly breached. Defendants affirmatively plead impossibility of performance and collateral estoppel. Defendants also counterclaim for specific performance or, alternatively, for adequate assurances of future performance.

The Court held a trial in the matter on September 18, 1991.

The Court has jurisdiction to decide the issues pursuant to 28 U.S.C. §§ 157(a) and 1334. Moreover, the Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1). *See*, 28 U.S.C. § 157(b)(2)(O).

The Court reviewed the pleadings in the file, the evidence presented September 18, 1991, and the thoughtful arguments of counsel. Accordingly, the Court makes the following findings of fact and conclusions of law:

## A. SEVERABILITY OF THE SALES AGREEMENT.

■ The Court concludes that the Sales Agreement is not severable from the Lease and Agreement between the parties. As discussed more fully in a previous Adversary Proceeding, *Jr. Food Mart of Arkansas, Inc. v. T.A. Bone, Inc. and Jim Bone, Inc.*, AP No. PB–91–5003, ("January Declaratory Judgment Proceeding" or "previous AP"), the Lease and Agreement between the parties provides: 1.) for the lease of five convenience food and gasoline retail outlets from defendants to the debtor ("Lease Provisions"); 2.) that defendants will haul a certain number of truckloads of gasoline per year for debtor's retail outlets ("Hauling Agreement"); and, in relevant part, 3.) that defendants will supply all the gasoline for those retail outlets ("Sales Agreement"). Debtor claims that the Sales Agreement is severable from the Lease Provisions and Hauling Agreement. Defendants claim the Lease and Agreement is a single unified document and that no part of it is severable.

The Court's previous decision in the January Declaratory Judgment Proceeding collaterally estops plaintiff from re-asserting the claim that any part of the contract is severable from the other parts. In the Eighth Circuit, use of collateral estoppel is appropriate when:

(1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 356 (8th Cir.1984) (citations omitted).

In the previous AP, Jr. Food Mart asked the Court to sever certain portions of the agreement before debtor assumed those portions as executory contracts under 11 U.S.C. § 365. The Court declined to do so and stated:

The Court further finds that the terms of the May, 1990 Agreement are not severable. All parties and cases cited agree that whether a single physical document could contain separate severable agreements turns on the intent of the parties as evidenced by the terms of the contract. The May Agreement did indeed contain three subject matters but the preamble is clear that the Agreement shall not be severable and each part is dependent upon the other parts. Further, another general term of the contract specifically limits severability to only those parts of the contract found to be invalid. The testimony of the parties supports the Court's finding.

*Jr. Food Mart of Arkansas, Inc. v. T.A. Bone, Inc. and Jim Bone, Inc.*, AP No. 91–5003, Docket No. 11, Order at 2–3 (March 12, 1991).

The issue of severability in the previous AP was identical to the issue *sub judice*. Jr. Food Mart was a party to the previous AP and had the opportunity fully and fairly to litigate the issue. The disposition of the previous AP is a final Order of this Court. Jr. Food Mart filed a notice of appeal in the previous AP but failed timely to designate the record on appeal, so the Court dismissed debtor's appeal. Following the *Arkla Exploration* standard, the previous AP collaterally estops Jr. Food Mart from relitigating the same issue. *See*, 734 F.2d at 356.

■ The Court further concludes that its previous determination of the law applicable to making the determination that the

parts of the Agreement are not severable is the law of the case. As the Eighth Circuit has stated:

> ... Law of the case is a doctrine of discretion, not a command to the courts. The doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. The doctrine prevents the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency.

*Little Earth of United Tribes, Inc. v. U.S. Dept. of Housing and Urban Development*, 807 F.2d 1433, 1440–41 (8th Cir.1986) (citations omitted).

The Court previously determined "that whether a single physical document could contain separate severable agreements turns on the intent of the parties as evidenced by the terms of the contract." The parties agreed that this was the case. The cases cited in the briefs also led to this conclusion. The Court concludes that this statement of law is the law of the case. As such, it controls this Court's consideration of the issues *sub judice.*

■ Plaintiff argues that the corresponding duties of the parties under the Sales Agreement are "agreed equivalents." The doctrine provides, as plaintiff states, that:

> If the performances to be exchange[d] under an exchange of promises can be apportioned into corresponding pairs of part performances so that the parts of each pair are properly regarded as agreed equivalents, a party's performance on his part of such a pair has the same effect on the other's duty to render performance of the agreed equivalent as it would have if only the pair of performances had been promised.

Pretrial Brief of Debtor at 2 (*citing,* Restatement 2d § 240). In accordance with the doctrine, plaintiff argues that the Sales Agreement is severable from the other portions of the contract. Plaintiff cites *Jones v. Gregg*, 226 Ark. 595, 293 S.W.2d 545 (1956) as the Arkansas case adopting the doctrine of "agreed equivalents."

The Court sets out the applicable citations from *Jones* in full because plaintiff's argument relies exclusively on the case. The *Jones* Court stated:

> Where a contract is entire and not divisible or severable, it must, as a general rule, be rescinded in toto and not in part; but if a contract consists of two or more parts, which are independent of each other, a partial rescission may be allowed....
>
> As a general rule the right to rescind must be exercised in toto. The contract must stand in all its provisions or fall altogether. Accordingly, a party cannot repudiate a contract or compromise so far as its terms are unfavorable to him and claim the benefit of the residue. A partial rescission, however, may be allowed where the contract is a divisible one.

*Jones*, 293 S.W.2d 545, 549 (citations and internal quotations omitted).

The *Jones* Court continued:

> As a general rule it may be said that a contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment.
>
> As in all other written instruments, the primary test for determining whether a contract is entire or severable is the intention of the parties to the contract. This intention is to be ascertained from the language used, the subject matter of the contract and the circumstances of the particular transaction.
>
> Other aids in arriving at the intention of the parties include the singleness or apportionment of consideration, the divisibility of the subject matter, and the construction given to the contract by the parties themselves. As a general rule it may be said that a contract is entire when, by its terms, nature, and purpose,

it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and that it is severable when, in its nature and purpose, it is susceptible of division and apportionment. Acts of the parties in treating the contract as entire or severable have an important bearing on its construction.

*Jones,* 293 S.W.2d 545, 550.

The *Jones* Court ultimately held that the parts of the contract provisions at issue were severable while other parts of the contract at issue were not severable. The *Jones* Court did not specifically mention the doctrine of "agreed equivalents."

The Court concludes that the doctrine of "agreed equivalents" does not apply to this case.[1] Debtor apparently contemplates severing the Sales Agreement because it *could* be an independent agreement. Following the doctrine of agreed equivalents, debtor contends that it could rescind the Sales Agreement due to defendant's alleged breach.

Debtor's argument incorrectly assumes that the Sales Agreement is severable from the Lease and Agreement. The Court previously has concluded that it is *not* severable. The theory of "agreed equivalents" is, at most, a secondary test to determine whether part of an agreement is severable from the remainder. Courts may apply this secondary test where the intention of the parties is unclear. As the *Jones* Court stated, the *primary* test to make that determination is the intent of the parties. *Jones,* 293 S.W.2d at 550; *accord, Ellison v. Tubb,* 295 Ark. 312, 749 S.W.2d 650, 651 (1988). The Court previously held that the parties, according to the primary test, intended to make the contract a *single,* nonseverable agreement. The secondary test does not apply to the issues *sub judice* because the parties' intentions are clear.

### B. BREACH OF THE SALES AGREEMENT.

Plaintiff contends that defendants have breached the Sales Agreement because,

since Jr. Food Mart assumed the entire contract, defendants have not been giving the debtor 10 days' credit to pay for each load of gasoline. Defendants contend that there has been no breach because, they claim, the Court previously held that defendants did not have to grant plaintiff credit. Defendants also claim that it is impossible to give plaintiff 10 days credit because they must pay their supplier on a cash basis.

The Court concludes that there has been a non-material partial breach of the Sales Agreement. Defendants substantially performed their part of the Sales Agreement by delivering the gasoline in a timely manner. Defendants required cash payment for the deliveries. Debtor agreed to those terms under protest in order to mitigate damages while preserving its right to receive the benefit of its bargain under the contract, i.e., 10 days credit.

A minor failure of performance on the part of one party does not justify the other in seeking to escape any responsibility under the terms of the lease or contract. *Dongary Holstein Leasing, Inc. v. Covington,* 293 Ark. 112, 732 S.W.2d 465, 467–68 (1987), *overruled on other grounds, Quinn Cos. v. Herring–Marathon Group, Inc.,* 299 Ark. 431, 773 S.W.2d 94 (1989). The credit terms are ancillary to the Sales Agreement. Defendants' refusal to abide by the credit terms is a minor failure of performance of the Agreement that does not entitle Jr. Food Mart to breach the entire contract. Debtor apparently agrees with this position because, as the Court has previously noted, Jr. Food Mart preferred to assume the entire contract when the Court held in the previous AP that the various agreements were not severable from each other.

The Court further concludes that defendant's refusal to abide by the credit terms was not a breach of their duty of good faith and fair dealing. Defendants claimed that this Court, in the previous AP,

---

1. The Court reaches this conclusion without deciding whether or not Arkansas has adopted the doctrine of agreed equivalents.

reformed that part of the Sales Agreement relating to the credit terms. The Court did not do so. Defendant's refusal to honor the credit terms was the result of a mistake of law. As Mr. Jim Bone, President of both defendant corporations, stated at the trial, he made this mistake in good faith. The Court credits this portion of his testimony. The Court will not impose prejudgment interest or any other sanction because there is no showing of dishonesty, wrongdoing, or improper motive. *See, Richard Short Oil Co., Inc. v. Texaco, Inc.,* 799 F.2d 415, 421–22 (8th Cir.1986).

■ Finally, the Court concludes that defendants' claim of impossibility of performance is unavailing. The Arkansas Supreme Court has set out the standard to determine impossibility of performance:

> The burden of proving impossibility of performance, its nature and extent and causative effect rests upon the party alleging it. He must show that he took virtually every action within his power to perform his duty under the contract. It must be shown that the thing to be done cannot be effected by any means. Resolution of the question requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of fault on his part in failing to perform.

*Frigillana v. Frigillana,* 266 Ark. 296, 584 S.W.2d 30, 33 (1979) (internal citations and quotations omitted); *see also, Mathews v. Garner,* 25 Ark.App. 27, 751 S.W.2d 359, 361 (1988).

The Court concludes that defendants have not met the burden of proving the impossibility of granting plaintiff 10 days credit. The defendants must show that extension of credit "cannot be effected by any means." As Mr. Bone stated on cross-examination, defendants are now extending credit to their other customers who comprise some 39 percent of their business. Defendants, then, did not prove that they could not extend credit to debtor.

It is clear that extension of credit terms to Jr. Food Mart under the contract will work a hardship on the defendant corporations. This is so because Texaco, the principal supplier, at the time of the hearing, had not extended credit to defendants for the purchases they must make in order to fulfill their contract with Jr. Food Mart. Nevertheless, the Court concludes that defendants bear this risk under the contract. Defendants or their attorneys drafted the contract. The Court will construe it against the drafter where there is any ambiguity. The contract provides that payment for all products "shall be made to [defendants] ... and postmarked on the 10th day following delivery." The contract does not provide for credit upon the condition that defendants receive a similar credit from their suppliers.

## C. COUNTERCLAIM FOR SPECIFIC PERFORMANCE OF THE HAULING AGREEMENT OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE.

■ The Court concludes that defendants' counterclaim for specific performance is premature. "Specific performance is an equitable remedy which compels the performance of an agreement or contract on the precise terms agreed upon." *City of Crossett v. Pacific Buildings, Inc.,* 298 Ark. 520, 769 S.W.2d 730, 733 (1989). A breach of the agreement is a prerequisite to granting the remedy of specific performance.

■ The Court concludes that there has been no breach of the hauling agreement. The hauling agreement provides for:

> a minimum of one thousand seven hundred and thirty-seven (1,737) loads per year during the year ... 1991 ... The nature of this Agreement is that [defendants] agree[] to haul the number of loads herein set out and that Junior agrees to make that number of loads available for [defendants] to haul. The parties recognize that the demand for gasoline and diesel fuel is variable from month to month and that the same number of loads will not be hauled each and every month; however, Junior obligates itself insofar as possible to equalize the said loads on a monthly basis.... for any loads not provided by Junior to [defen-

dants] pursuant to the terms of this Agreement there shall be paid to [defendants] the sum of $118 per load as liquidated damages for any such loads not provided.

Defendants' Ex. 1 at 20–21. Mr. Bone testified that Jr. Food Mart was not fulfilling this agreement because it did not require defendants to haul enough loads *per month*. The contract, however, does not provide a monthly minimum or maximum. It only provides for a yearly figure.

The Court, again, must construe the contract against the drafter, i.e., against defendants. It is clear to all parties that Jr. Food Mart will not meet the terms of the Hauling Agreement by the end of the year. The contract provides a $118 per load remedy for such a breach. The contract implicitly provides a one-year time frame for determining whether a breach has occurred and the extent of the remedy available. Defendants have no recourse under the terms of the contract but to wait until the end of calendar year to determine the extent of the breach.

■ The Court further concludes that defendants' alternative theory for adequate assurance of future performance is unavailing. Defendants had the opportunity to require adequate assurance of the debtor's future performance at the time Jr. Food Mart assumed the executory contract. The Bankruptcy Code provides that the debtor-in-possession may not assume an executory contract that is in default unless the debtor-in-possession "provides adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1)(C). The defendants agreed to an Order in the previous AP that stated that the debtor had provided adequate assurance of future performance under the contract. The Court concludes that the Order in the previous AP collaterally estops defendants from relitigating that issue here.[2] *See* Discussion of collateral estoppel, *supra*.

**2.** Debtor, of course, must continue in good faith under its obligation to equalize the number of

## D. COUNTERCLAIM FOR FAILURE TO PAY FOR FUEL AT STORE #176.

The Court concludes that debtor partially breached its agreement to pay defendants for gasoline taken out of defendants' tanks at store #176. Defendants claim that one of debtor's premium gasoline pumps inaccurately pumped gasoline for nearly a month in March and April of this year. The Court credits the testimony of defendants' witness, Ms. Vickie Grooms, the manager of debtor's store #176. Ms. Grooms stated that debtor first identified the problem with the pump on March 29, 1991. Although debtor's maintenance personnel examined the pump at that time, they did nothing until defendants again brought the problem to debtor's attention on April 25. Debtor corrected the problem then. The Court also credits the testimony of Ms. Tina Morrison, defendants' purchasing agent, who provided the Court with the figures needed to determine the amount of defendants' damages. *See* Defendants' Ex. 6.

## E. MISCELLANEOUS MATTERS.

■ The Court concludes that defendants must provide debtor with "Texaco" brand gasoline when they warrant to debtor that they are hauling Texaco gasoline. There was no proof that defendants' use of non-Texaco gasoline in the past impaired the value of the gasoline to debtor. So, as the Court stated on the record at the conclusion of the hearing, there is no basis for granting debtor any retrospective relief. *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 785 S.W.2d 13 (1990); *O'Neal Ford, Inc. v. Earley*, 13 Ark.App. 189, 681 S.W.2d 414, 416 (1985). The Court puts the defendants on notice that they must strictly comply with the terms of the Sales Agreement in this regard in the future. This applies equally to all stores under the agreement, including store #176, where debtor effectively has a contract to take whatever gasoline it needs

loads defendants must carry.

out of defendants' tanks in an adjoining location.

The Court also concludes that the Texaco discounts are pass-through discounts only. Texaco provides a one percent discount to certain customers upon the fulfillment of certain conditions. The contract obligates debtor to pay "a price equal to the [defendants'] actual cost of such gasoline (after all discounts and rebates) plus one (1) cent per gallon...." Defendants' Ex. 1 at 23. As the Court stated on the record at the conclusion of the trial, the contract only obligates the defendants to pass-through to Jr. Food Mart the discounts Texaco applies. There is no obligation to pay debtor rebates if Texaco refuses to pay rebates. The parties agreed to this construction of the contract at the hearing.

## F. REMEDIES.

The Court concludes that defendants must pay Jr. Food Mart 6 percent interest, i.e., the rate provided in the Arkansas Constitution where there is no agreement of the parties, for a maximum of 10 days on the price of every load defendants hauled since the assumption of the contract where debtor pre-paid for the load. Debtor must receive the benefit of its bargain with the defendants. The Court further concludes that defendants are not obligated to pay prejudgment interest on the interest because they acted in good faith, albeit under a mistake of law. *Sykes v. United States*, 392 F.2d 735, 743 (8th Cir. 1968) (money paid or received by mistake does not draw interest until after discovery of mistake). Post-judgment interest on this sum shall accrue at the rate provided by Federal Law when the Court enters its judgment.

The Court directs debtor to file with the Court prior to the close of business on October 30, 1991 an affidavit from Mr. William A. Smith, Vice–President of Finance for the debtor, setting out the calculation of damages in accordance with the Court's determination. Defendants have up to and including November 13 in which to file any objections to debtor's calculations.

The Court concludes that debtor must pay defendants $3,215.63 for the gasoline pumped at store # 176 but for which debtor has not paid. Debtor did not put on any evidence to contradict defendants' proof, therefore prejudgment interest on this amount is due at the rate of 6 percent from April 11, 1991, i.e., the date half-way between the discovery of the problem, March 29, and the resolution of the problem, April 25. Post-judgment interest on the accumulated sum will accrue at the rate of 5.57 percent, the current federal rate.

The Court further concludes that the parties should bear their own costs in these matters.

## G. CONCLUSION.

The contract between the parties remains in effect as set out in the agreement, and as provided above. It is therefore

ORDERED that Debtor's claim for relief is granted in part and denied in part in accordance with the terms of this Order. It is further

ORDERED that Debtor file with the Court by October 30, 1991 an affidavit of Mr. William Smith setting out the calculation of damages as to its claim for interest on the pre-paid loads of gasoline in accordance with the terms of this Order. It is further

ORDERED that Defendants file by November 13, 1991 any objections they may have to debtor's calculation of damages. It is further

ORDERED that Defendants' counterclaim for relief is granted in part and denied in part in accordance with the terms of this Order.

IT IS SO ORDERED.