F.L. DAVIS BUILDERS SUPPLY, INC., and Temple-Inland Forest Products Corporation *v.* Bill KNAPP

CA 92-402 853 S.W.2d 288

Court of Appeals of Arkansas
Division II
Opinion delivered May 12, 1993
[Rehearing denied September 22, 1993.]

54

*Friday, Eldredge & Clark*, by: *Jerry L. Malone*, for appellants.

*Tom Thompson, J. T. Skinner, John M. Belew*, and *Lynn Stringer*, for appellee.

JOHN B. ROBBINS, Judge. Appellee Bill Knapp filed suit against appellants F. L. Davis Builders Supply, Inc. and Temple-Inland Forest Products Corp., alleging breach of implied warranties regarding insulation board he had purchased from appellants. Judgment was entered for appellee in the amount of $89,721.00. Appellants appeal, raising five arguments for reversal. After due consideration of the record and the briefs filed by the parties, we find no error and affirm.

During October through December of 1987, appellee purchased from appellant F.L. Davis agricultural insulation board to be used in the construction of chicken houses. The agricultural board ("ag board") was ordered from the manufacturer, Temple-Inland Forest Products, and shipped directly to the construction site. The ag board cost appellee $34,055.48.

Appellee used the ag board in the construction of four chicken houses. After some time had passed, the foil facers on the foam insulation board began to peel off in sheets and would eventually fall to the floor. The process of the foil peeling away from the foam is referred to as "delamination."

After appellee notified appellants of the delamination, Temple-Inland sent a representative to investigate. He determined that the delamination had not materially affected the performance of the ag board. He advised appellee that the ag board was not defective and that the delamination was an expected occurrence. Appellee then filed suit against appellants based on breach of implied warranties. The case went to trial in October 1991, and was submitted to the jury on a general verdict

form for breach of the implied warranty of merchantability and the warranty of fitness for a particular purpose. The jury returned a verdict in favor of appellee in the amount of $103,180.00. The trial court reduced the verdict to $89,721.00 and awarded an attorney's fee in the amount of $15,000.00.

Appellants' first contention is that the trial court erred in refusing to grant a directed verdict in favor of appellants on the issue of breach of the implied warranty of merchantability. When we review the trial court's denial of a motion for directed verdict, we must determine whether the verdict is supported by any substantial evidence. *Tremco, Inc.* v. *Valley Aluminum Products, Corp.*, 38 Ark. App. 143, 831 S.W.2d 156 (1992). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other, forcing the mind to pass beyond suspicion or conjecture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991). Where it is contended that the evidence is insufficient to support the appellee's claim, the evidence, along with all reasonable inferences deducible therefrom, is examined in the light most favorable to the party against whom the motion is sought. *Tremco, supra.* Only when the proof of one party is so clear, convincing, and irrefutable that no other conclusion could be reached should the issue be taken from the jury and decided by the court. *Ciba-Geigy Corp.* v. *Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992). If there is any conflict in the evidence or if the evidence is not in dispute but is such that fair-minded men might draw different conclusions therefrom, a jury question is presented. *State Farm Mutual Automobile Insurance Co.* v. *Pharr*, 305 Ark. 459, 808 S.W.2d 769 (1991).

Arkansas Code Annotated § 4-2-314 (1987) provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Section 4-2-314(2)(c) provides that "Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used." To recover for breach of an implied warrant of merchantability, the plaintiff must prove that (1) he has sustained damages; (2) the product sold to him was not merchantable, *i.e.*, not fit for the ordinary purpose for which such goods are used; (3) this unmerchantable condition was a proximate cause of the damages; and (4) he was a person whom the defendant might

reasonably expect to use or be affected by the product. *E.I. DuPont Nemours & Co.* v. *Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983).

Appellee testified that he has been in the chicken growing business all his life and is a contract grower for Townsends of Arkansas, Inc. In preparing to build four chicken houses, he went to F.L. Davis Builders Supply to buy his materials. Appellee offered evidence that Temple-Inland, manufacturer of the ag board, represented that the ag board was suitable for use in exposed applications in poultry confinement buildings. Testimony was introduced through the deposition of Robert Booker, sales manager for Temple-Inland. Booker testified that the foil facers supposedly gave the ag board a better insulation value, and that if the board did not have the foil facers, the insulation quality would be reduced—it would not be "as good as it would have been expected or intended to be." Booker also stated, "I still stand by my statement that the foil fascia needs to be up in order to preserve the insulation qualities of the ag board, preserve 100% of it, yes."

Appellee testified that as a contract grower for Townsends, he is required to maintain the chicken houses at specified temperatures. He also stated that Townsends has expressed concern about the chicken houses and the delamination. Rod Brown, the broilers supervisor for Townsends, testified that Townsends has a certain required R value, or insulation value, that has to be maintained in the chicken houses which are under contract with them. He said that he had observed the delamination process in appellee's chicken houses, and that it was getting progressively worse. Brown testified that ordinarily they would not expect to see the foil facers falling down, and that Townsends had been required to close out certain growers' contracts because of non-compliance and problems with their houses. Weldon Peters, live productions manager for Townsends, testified that the delamination was getting progressively worse, and that, in just a matter of time, appellee would be asked by Townsends to do something about it.

Terry Hipp, manager of Hipp Lumber and Hardware, testified as to what would need to be done to correct the ag board problem in these chicken houses. Due to the construction of the

houses and the placement of the ag boards, the tin roof and the tar felt paper would have to be removed to replace the ag boards. Hipp estimated that it would cost $22,430.40 per chicken house to replace the damaged boards, for a total of $89,721.60.

Appellants moved for a directed verdict on the basis that appellee had failed to establish a cause of action for breach of the implied warranty of merchantability. Considering the foregoing evidence in the light most favorable to appellee, the party against whom the motion was sought, we find that the motion for a directed verdict on the implied warranty of merchantability issue was properly denied.

Appellants' second argument is that the trial court erred in refusing to direct a verdict in their favor on the issue of breach of the implied warranty of fitness for a particular purpose.

Arkansas Code Annotated § 4-2-315 (1987) provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

To recover for breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove that (1) he has sustained damages; (2) at the time of contracting, the defendant had reason to know the particular purpose for which the product was required; (3) the defendant knew the buyer was relying on his skill or judgment to select or furnish the product; (4) the product was not fit for the purpose for which it was required; (5) this unfitness was a proximate cause of plaintiff's damages; and (6) plaintiff was a person whom defendant would reasonably have expected to use the product. *Great Dane Trailer Sales, Inc.* v. *Pryrock*, 301 Ark. 436, 785 S.W.2d 13 (1990).

The proof of many of these elements has already been discussed above. Appellants argue that no particular purpose was shown, citing *Berkeley Pump Co.* v. *Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983), which quotes a comment to the Uniform Commercial Code stating that a "particular purpose" may differ from an ordinary purpose in that it envisages a specific

use by the buyer which is peculiar to the nature of his business, whereas the ordinary purposes for which the goods are used are those envisaged in the concept of merchantability and go to uses that are customarily made of the goods. Appellants argue that since use in chicken houses is one of the ordinary purposes of the ag board, no specific purpose has been shown and the implied warranty of fitness for a particular purpose does not apply. However, in *Great Dane Trailer Sales, supra,* the court stated that if the particular purpose for which goods are to be used coincides with their general functional use, the implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability. 301 Ark. 436 at 444. Here, we also find that the particular purpose for which appellee purchased the ag board coincides with its ordinary use and purpose, and as a consequence the implied warranties of merchantability and fitness merged.

Appellant Temple-Inland argues that, while F. L. Davis may have dealt directly with appellee and may have known whether appellee was relying on Davis's judgment or skill in selecting or furnishing the ag board, there was no evidence of such knowledge of reliance on the part of Temple-Inland. Inasmuch as we have found a merger of the implied warranties of merchantability and fitness, it is enough that appellee was a person whom Temple-Inland might reasonably have expected to use its products.

Under the law discussed herein and the evidence presented at trial, we cannot say the trial court erred in denying appellant's motion for a directed verdict on the issue of an implied warranty for a particular purpose.

Appellants' third contention is that the trial court erred in instructing the jury on the measure of damages in a breach of warranty action. The jury was instructed that if they found for appellee on the question of liability, they must fix the amount of money that would reasonably compensate him for "the reasonable expense of necessary repairs to any property which was damaged" if the damage was proximately caused by the breach of the implied warranties by appellants. Arkansas Code Annotated § 4-2-714(2) (1987) provides that the measure of damages for breach of warranty is the difference at the time and

place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. Section 4-2-714(3) provides that in a proper case any incidental and consequential damages under § 4-2-715 may also be recovered. Under § 4-2-715(1) and (2)(b), incidental damages resulting from the seller's breach include any reasonable expense incident to the breach and consequential damages include injury to property proximately resulting from any breach of warranty.

Appellee offered evidence that the foil facing on the ag board was falling off and that this reduced the insulating effectiveness of the board. He also offered evidence that because of the construction of the chicken houses, the tin roof and tar paper would have to be removed in order to replace the ag board. Considering this evidence and the code provisions providing for incidental or consequential damages, we cannot say the trial court erred in instructing the jury on the amount of damages.

Appellants also challenge the court's admission of the discovery deposition testimony of Robert Booker as evidence at the trial. The court ruled that the deposition testimony was admissible pursuant to Ark. R. Civ. P. 32(a)(3):

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of a witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

The court noted that Mr. Booker had been on the defendants' witness list and that while he was not on the plaintiff's witness list,

it appeared from the plaintiff's statements that they felt he was going to be the corporate representative. Statements of counsel indicated that Booker was seen in the area the night before but he did not appear for trial. The counsel for the defense declined to respond as to whether Booker was still in the area. The court stated that given his lack of knowledge as to where Booker was, he was going to have to assume that he was not in the area and, since Booker was from Texas, that he was more than 100 miles away.

Appellants rely on *Goodwin* v. *Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989), in which the supreme court held that because the parties and the court thought they were dealing with "discovery" depositions as opposed to "evidentiary" depositions, there was an implied agreement that the depositions would not be used as evidence at the trial, and appellant waived the literal wording of Ark. R. Civ. P. 32. In *Goodwin*, the following colloquy took place when the judge asked appellant's attorney about his medical witness and depositions:

> [Appellant's attorney]: Your Honor, we're going to have them all here.
>
> The Court: So regardless of what the court does, you're not going to try to use the *discovery depositions* as evidentiary depositions? [Emphasis added in *Goodwin*.]
>
> [Appellant's attorney]: We have no present intention of doing that and never have had.

300 Ark. 475 at 485. The *Goodwin* court observed that from the foregoing colloquy, "it is manifest that the parties and the court thought they were dealing with discovery depositions, not evidentiary." We find the situation in the case at bar to be factually distinguishable from *Goodwin*. The facts there were such that the supreme court found it "manifest" that the parties and the court had made a distinction as to what kind of deposition was being taken and how it would be used. We find nothing in the instant case to indicate any implied agreement or waiver of Rule 32. In fact, the trial court found that to exclude Booker's deposition testimony while he was or had been in the area would be contrary to the open disclosure that had taken place up to that time. We find no error in the court's admission of Booker's deposition testimony into evidence.

Appellant relies on the same argument to contend that the trial court improperly used the discovery deposition to authenticate certain exhibits. For the same reasons outlined above, we find no error on this point.

 Appellants also contend that the trial court improperly permitted Terry Hipp to testify as an expert witness. Appellants base this argument on the fact that Terry Hipp had been a co-defendant with Temple-Inland in a previous litigation. At the time of the instant trial, Hipp was no longer a party in the other litigation, nor was he a party to the present litigation. Upon determining that Hipp's testimony was not going to be an explanation of why the delamination was taking place, but only what it would take to repair the damage, the court allowed Hipp to testify. Whether a witness may give expert testimony rests largely within the sound discretion of the trial court and the court's determination will not be reversed unless an abuse of discretion is found. *Montgomery* v. *Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992). We find no such abuse of discretion.

 Appellants contend that the trial court improperly allowed appellee to supplement discovery with designation of expert witnesses and disclosure of documents on the day before trial. The court found that appellants were not surprised by the documents supplemented and allowed the supplementation. Appellants concede the trial court has "significant discretion" in deciding such matters, but contends the appellee's supplementation goes beyond the rules of basic fairness. Rule 26(e)(1) of the Arkansas Rules of Civil Procedure requires a party to seasonably supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity and location of each person expected to be called as a witness at trial, and in the case of expert witnesses, the subject matter on which he is expected to testify, and the substance of his testimony. A duty to supplement responses may be imposed by order of the court, agreement of the parties, or *at any time prior to trial* through new requests for supplementation of prior responses. Ark. R. Civ. P. 26(e)(3). (Emphasis added.) The judge determined that there was no surprise to appellants before allowing the supplementation. We find no abuse of discretion.

■ Appellants' final contention is that the jury considered improper matters in reaching its verdict. Appellants contend that the jury considered an inflation factor in reaching its verdict. However, there is nothing in the record to prove this; appellants are relying on their supposed knowledge of a discussion the circuit clerk had with the jury foremen. In *Dickson* v. *Delhi Seed Company*, 26 Ark. App. 83, 760 S.W.2d 382 (1988), the appellants argued that the trial court erred in failing to order a new trial when the jury returned a verdict that demonstrated it had used evidence of anticipated profits in computing damages because that was not a proper measure of damages. The supreme court noted that because the jury verdict was not submitted on interrogatories, the court could not conclude that the jury used evidence of anticipated profits in reaching their verdict. Likewise, the jury verdict herein was not submitted on interrogatories. Absent some showing in the record that the jury improperly considered an inflation factor, we will not presume the jury considered improper evidence.

Affirmed.

PITTMAN and ROGERS, JJ., agree.