# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3111

_____

J. R. Cartillar, doing business as    *
Cartillar Flying Service,             *
                                      *
    Plaintiff/Appellee,          *
                                      *
    v.                           *
                                      *
Turbine Conversions, Ltd.,            *
                                      *
    Defendant/Appellant.         *
_____                        *
                                      *  Appeal from the United States
Turbine Conversions, Ltd.,            *  District Court for the Eastern
                                      *  District of Arkansas.
    Third-Party Plaintiff,       *
                                      *
    v.                           *
                                      *
Air Cargo Carriers, Inc.,             *
                                      *
    Third-Party Defendant.       *
_____                      *
                                      *
J. R. Cartillar, doing business as    *
Cartillar Flying Service,             *
                                      *
    Cross-Claimant,              *
                                      *

                    v.                          *
                                                *
Air Cargo Carriers, Inc.,                       *
                                                *
            Cross-Defendant.                    *

                            _____

                    Submitted:  June 16, 1999

                    Filed: August 19, 1999
                            _____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and PANNER,
      District Judge.[1]
                            _____

BEAM, Circuit Judge.

      Turbine Conversions (Turbine) appeals the district court's[2] denial of judgment
as a matter of law following a jury verdict in favor of J. R. Cartillar.  Turbine argues
that there was insufficient evidence to establish that the damages Cartillar suffered were
caused by the unmerchantable condition of the engine Turbine sold to Cartillar.  We
affirm.

I.     BACKGROUND

_____

      [1]The Honorable Owen M. Panner, United States District Judge for the District
of Oregon, sitting by designation.

      [2]The Honorable G. Thomas Eisele, United States District Judge for the Eastern
District of Arkansas.

J. R. Cartillar owns and operates a crop-dusting company. Turbine offers a service through which it replaces the piston motor on an agricultural aircraft with a smaller and lighter, yet more powerful, turbine engine. This, in turn, increases the maximum payload of the aircraft, making it more efficient and more profitable. Cartillar contracted with Turbine to convert two of his airplanes. As part of the agreement, Turbine located several used engines and presented the choices to Cartillar, who selected two engines recommended by Turbine. Turbine then purchased the engines from Air Cargo, an air freight company, and supplied the used engines to Cartillar as part of the contract.

Turbine engines for aircraft contain certain "life-limited" parts. The manufacturer and the FAA mandate that these parts be replaced after a certain number of cycles[3] whether or not the part shows signs of stress or wear. Thus, much of the value of a used turbine engine is based on the number of cycles remaining before an expensive overhaul is required. The contract between Turbine and Cartillar included an express warranty on the engines for "90 days, or 150 flying hours." The contract also included a summary of the life-limited parts for each engine, with representations as to the number of cycles remaining on each life-limited component. Because the contract did not contain a disclaimer, under Arkansas law, the contract included implied warranties of merchantability and fitness for a particular purpose.[4]

---

[3]A "cycle" occurs each time a turbine is started and shut down, usually associated with each take-off and landing.

[4]The Arkansas Code reads in relevant part:

(1) Unless excluded or modified, . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.
(2) Goods to be merchantable must be at least such as:
(a) Pass without objection in the trade under the contract description; and
. . .(c) Are fit for the ordinary purposes for which such goods are used .

Cartillar picked up the first plane, with engine one, in November 1994. In July 1995, after only 205 flying hours, an indicator light warned of metal in the engine's oil. On inspection, the "chip detector" was found to be full of metal shavings. Cartillar sent the engine to a repair facility recommended by Air Cargo, the supplier of the engines to Turbine. Though Air Cargo promised to supply the needed parts, none provided were serviceable, and Cartillar paid approximately $77,000 for the repairs which took thirty-five days to complete. The repairs did not involve any life-limited parts.

In December 1995, the engine installed on the second plane similarly failed because of metal in its oil. Cartillar took this engine to a different repair facility where it was determined that the engine had suffered a gear or bearing failure. The repairs for engine number two cost approximately $117,000. While at the repair shop, the shop manager, Roy Haight, audited the log books for the engine. He discovered that, not only were there far fewer cycles left on the life-limited parts than represented in the sales contract, but the serial numbers did not match the contract and it was in fact a different engine. Concerned by this revelation, Cartillar asked Haight to audit the logs for the first engine as well. That audit revealed that the cycles remaining on most of the life-limited parts of the engine were half of that represented in the contract.

---

. . (3) Unless excluded or modified, . . . other implied warranties may arise from course of dealing or usage of trade.

Ark. Code Ann. § 4-2-314.

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Ark. Code. Ann. § 4-2-315.

Cartillar filed this action alleging breach of express warranties. He sought damages representing the difference in value between the remaining cycles as represented and those actually received. He also claimed breach of implied warranties of merchantability and fitness for a particular purpose. For that claim, he sought damages to recoup the costs of the two major repairs. The district court directed a verdict in favor of Cartillar on the express warranties, and the jury found for Cartillar on the implied warranty claims. Turbine appeals only the judgment on the implied warranty claim with regard to engine one.

## II.   DISCUSSION

We review the denial of a motion for judgment as a matter of law de novo, using the same standard as the district court. We will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party. See Fed. R. Civ. P. 50(a)(1); Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997).

Turbine asserts that it is entitled to judgment as a matter of law because Cartillar failed to adduce any evidence, beyond speculation, that engine one failed because it was unmerchantable or unfit for use in an agricultural aircraft.[5] There is no dispute that the engine was not merchantable. Due to the significant difference in number between the actual and represented cycles remaining on the life-limited parts, the engine would not "[p]ass without objection in the trade under the contract description."

---

[5]The parties do not dispute that either theory is applicable in this case. In Arkansas, "[i]f the particular purpose for which goods are to be used coincides with their general functional use, the implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability." Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc., 785 S.W.2d 13, 17 (Ark. 1990).

Ark. Code Ann. § 4-2-314(2)(a). The question is, was the failure, and Cartillar's damages, caused by that unmerchantable condition, or by another unmerchantable condition that existed at the time of delivery.

The gear failure in engine one, similar to the failure in engine two, did not involve life-limited parts. Therefore, the failure could not have been directly caused by the underrepresentation of remaining cycles. Thus, Turbine asserts that the jury could only speculate as to what caused the gear failure, and whether the condition that caused the failure was present when the engine was sold.

Cartillar relies primarily on the testimony of Roy Haight. Haight testified about the failure of engine one based on his expert knowledge, his inspection and repair of engine two, and his review of the parts listed on the invoice for the repair of engine one. Haight testified that the failure of engine one was also caused by gear or bearing failure. He concluded that both engines suffered primary gear or bearing failure. The evidence regarding the type of failure was uncontradicted. Haight also testified that, as the condition of the engine was represented to Cartillar, "[g]iven the life summary of this engine and knowing that he was looking at a term of five years [of cycles remaining on the life-limited parts] to run, no, you would not have felt that you would run into these kind of repairs in the first couple hundred hours . . . of operation." Jim Germek, director of operations for Air Cargo, similarly testified that he was "flabbergasted" that the engine "blew up.”

Evidence of various possible causes for the gear failure was presented. These included general wear and tear, excess stress caused by abuse such as overloading the plane or operating at excessively high temperatures, coating loss on the bearings, poor or incorrect maintenance, or an operation known as "beta," where the pilot adjusts the propeller to a neutral or slightly reverse thrust in order to slow the plane while in flight.

The district court determined that, though it was a close call, there was sufficient evidence to submit the issue to the jury. We agree. The jury was not left to mere speculation, as Turbine argues. Viewed in the light most favorable to Cartillar, the evidence established that gear failure in an engine with the history of engine one would not have occurred unless it was defective. The jury could have found that the engine did not fail because of abuse since Haight found no sign of abuse in engine number two. The evidence also showed that Cartillar performed proper maintenance on the aircraft and did not subject the engine to overheating or "beta." Although wear and tear from normal use can eventually cause metal fatigue and gear failure, gear failure in an engine with the life history as represented to Cartillar is not a normal or expected occurrence. The evidence established that the life-limited parts of the engine had had far more use than represented by the contract. From this the jury could infer that the other parts of the engine had also been used far more than Cartillar bargained for as well. Thus, even if the failure was due to normal wear and tear, the fact that the engine had suffered more wear and tear by the time of the sale than would reasonably have been expected of an engine with the life history represented, the engine could have been unmerchantable[6] and thus could have been the cause of the damages suffered by Cartillar.

We agree with the district court that this is a close call. However, we find that there is sufficient circumstantial evidence for a jury to find, as instructed, that engine one contained an "atypical condition . . . that [one] would not expect to exist in such [a] used [engine] at the time of delivery under all the facts and circumstances revealed by the evidence."

---

[6]See James J. White & Robert S. Summers, The Uniform Commercial Code § 9-8, at 520 (4th ed. 1995).

## III. CONCLUSION

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.